UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| Tomas D.,<br><br>               Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | Case No. 21-CV-5791<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income (SSI) benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

## I.    ISSUES FOR REVIEW

A.  Whether the ALJ Properly Evaluated Medical Opinion Evidence

B.  Whether the ALJ Properly Evaluated Plaintiff's Subjective Testimony

C.  Whether the ALJ Properly Evaluated Lay Witness Testimony

D.  Whether the ALJ Erred by Failing to Reopen Plaintiff's 2012 Claim

## II.    BACKGROUND

In April 2012, plaintiff filed a Title II application for a period of disability and disability insurance benefits (DIB) and a Title XVI application for supplemental security

income (SSI) benefits. Administrative Record ("AR") 2111, 2121, 2131, 2141. Both applications were denied initially and on reconsideration. AR 2111-41.

On March 6, 2015, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits (DIB), alleging a disability onset date of December 31, 2009. AR 785, 1939.

Plaintiff's applications were denied initially and on reconsideration. AR 210-57. Administrative Law Judge ("ALJ") Allen Erickson held a hearing on November 1, 2016 (AR 144–207) and issued a decision on December 21, 2016 finding plaintiff not disabled. AR 21-48. Plaintiff appealed the decision to this Court and the Court ordered the decision be reversed and remanded (by stipulation) on July 10, 2018. AR 890-892.

ALJ Erickson held another hearing on May 23, 2019 (AR 815-50) and issued a decision on July 3, 2019, again finding plaintiff not disabled. AR 782–814. Plaintiff appealed the decision to this Court and the Court ordered the decision reversed and remanded. AR 2097–2103.

ALJ Rebecca Jones held hearings on January 5, 2021 and May 18, 2201, where medical expert Dr. Toews testified, and plaintiff amended his alleged onset date to August 31, 2010. AR 1979–2014, 2017–62. ALJ Jones issued a decision on August 24, 2021 finding plaintiff not disabled. AR 1939-64.

The relevant period for plaintiff's DIB claim is between the amended alleged onset date (August 31, 2010) through his date last insured (March 31, 2016), and the relevant period for plaintiff's SSI claim is from the amended alleged onset date through the date of the decision of the ALJ. AR 1940-41.

Plaintiff seeks judicial review of the August 24, 2021 decision. Dkt. 11.

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 2

### III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### IV.    DISCUSSION

In this case, the ALJ found that plaintiff had the following severe medically determinable impairments -- major depressive disorder, generalized anxiety disorder, personality disorder, degenerative disc disease of the lumbar spine. AR 1943. Based on the limitations stemming from these impairments, the ALJ found that Plaintiff could perform a reduced range of medium work. AR 1947.

Relying on vocational expert ("VE") testimony, the ALJ found at step four that plaintiff could not perform his past relevant work, but could perform other jobs that exist in significant numbers in the national economy at step five of the sequential evaluation; therefore, the ALJ determined plaintiff was not disabled. AR 1692-94.

A.  Whether the ALJ Properly Evaluated Medical Opinion Evidence

Plaintiff assigns error to the ALJ's evaluation of the medical opinions of Dr. Wheeler, Dr. Brown, Dr. Krueger, Dr. Budwey, and Mr. Gray, MA. Dkt. 11, pp. 3–20. Additionally, Plaintiff assigns error to the ALJ's decision to discount their medical opinions in favor of the opinion of non-examining medical expert, Dr. Toews. *Id*. at 15.

1    1.    <u>Medical Opinion Standard of Review</u>

2    Plaintiff filed his applications before March 27, 2017, therefore under the

3    applicable regulations, an ALJ must provide "clear and convincing" reasons to reject the

4    uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to

5    reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d

6    821, 830-31 (9th Cir. 1995). When a treating or examining physician's opinion is

7    contradicted, the opinion can be rejected "for specific and legitimate reasons that are

8    supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d

9    1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

10    2.    <u>Opinions of Dr. Wheeler</u>

11    Kimberly Wheeler, Ph.D. provided three opinions regarding plaintiff's mental

12    health throughout the relevant period. AR 504-08, 554–63, 2508-12.

13    On September 13, 2010, Dr. Wheeler found plaintiff markedly limited in his ability

14    to respond appropriately to and tolerate the pressures and expectations of a normal

15    work setting. AR 558. The ALJ gave "very little weight" to this finding because (1) it was

16    based on plaintiff's subjective reporting, and (2) it was inconsistent with Dr. Wheeler's

17    own treatment notes. AR 1957.

18    An ALJ may reject a physician's opinion "if it is based 'to a large extent' on a

19    claimant's self-reports that have been properly discounted as incredible." *Tommasetti v.*

20    *Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)(quoting *Morgan v. Comm'r. Soc. Sec.*

21    *Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). But this situation is distinguishable from one

22    in which the doctor provides her own observations in support of her assessments and

23    opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir.

24    2008). "[W]hen an opinion is not more heavily based on a patient's self-reports than on

25

clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1199-1200). Notably, a psychiatrist's clinical interview and MSE are "objective measures" which "cannot be discounted as a self-report." *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Dr. Wheeler's opinion consisted of more than just plaintiff's subjective reports. As the ALJ states, Dr. Wheeler completed a mental status exam, which included Dr. Wheeler's own observations and was the basis for the marked limitation assigned to plaintiff. AR 558 ("The Mental Status Exam results must be included with this evaluation."); 561-63. Contrary to the ALJ, Dr. Wheeler's opinion is "not more heavily based on a patient's self-reports than on clinical observations." *Ghanim*, 763 F.3d at 1162. The ALJ, therefore erred in discounting Dr. Wheeler's September 2010 opinion for this reason.

The ALJ, however, did not err in discounting Dr. Wheeler's opinion because of its inconsistency with "an essentially unremarkable mental status exam." AR 1957-58.  An ALJ may discredit a medical opinion if the opinion is contradicted by the offering provider's own treatment notes. *Buck*, 869 F.3d at 1050. Here, Dr. Wheeler's mental status exam described plaintiff as oriented and cooperative. AR 561. Plaintiff was found to have 5/5 fund of knowledge, 3/3 memory, and normal concentration. *Id.* Additionally, plaintiff's abstraction, judgment/problem solving, insight, and impulse control were within normal limits. *Id*. The ALJ, therefore, could reasonably find Dr. Wheeler's opinion inconsistent with her own notes. As this is a valid reason to discount Dr. Wheeler's 2010 opinion, any error the ALJ committed is harmless. *See Carmickle v. Commissioner,*

1   *Social Sec. Admin.*, 533 F.3d 1155, 1162-1163 (9th Cir. 2008) (inclusion of erroneous

2   reasons is harmless).

3          On March 12, 2015, Dr. Wheeler found plaintiff mildly to markedly limited with his

4   ability to perform basic work activities. AR 506-07. The ALJ gave "little weight" to these

5   limitations because they were inconsistent (1) with Dr. Wheeler's own treatment notes,

6   and (2) the reports of plaintiff's treating counselors showing that plaintiff had improved

7   and his symptoms stable.

8          As discussed above, the ALJ may discredit a medical opinion if the opinion is

9   contradicted by the offering provider's own treatment notes. *Buck*, 869 F.3d 1050. Dr.

10  Wheeler's mental exam shows plaintiff's orientation, perception, memory, fund of

11  knowledge, and abstract thought intact and within normal limits, while plaintiff's thought

12  process and content and concentration were mixed. AR 508. Dr. Wheeler found that

13  plaintiff's insight and judgment were not within normal limits, but noted plaintiff's

14  judgment is "fine for common sense problem solving, but in life, isn't making use of

15  available resources." *Id.*

16         Based on these results, the ALJ could have reasonably found the limitations

17  assigned to plaintiff inconsistent with Dr. Wheeler's opinion that plaintiff is markedly

18  limited. Because the ALJ provided a valid reason to discount Dr. Wheeler's 2015

19  opinion, the Court does not need to further analyze the ALJ's other reason for

20  discounting the opinion as any error the ALJ may have committed based on those

21  grounds would be harmless. *See Carmickle*, 533 F.3d at 1162-1163.

22         On July 9, 2020, Dr. Wheeler found plaintiff moderately to severely limited in

23  plaintiff's ability to perform basic work activities. AR 2510. The ALJ gave "very little

24

25

1   weight" to Dr. Wheeler's opinion, reasoning that plaintiff "appears to have intentionally

2   presented more severe limitations than are supported by his functioning." AR 1960.

3          To support this finding, the ALJ first pointed to Dr. Wheeler's notes about

4   plaintiff's admissions that he is making minimal progress in therapy as he uses those

5   sessions to vent, and that he rejects suggestions of different methods of therapy. AR

6   2511. The ALJ then pointed to plaintiff's interview where he reported getting kicked out

7   of buses and stores due to his behavior around people, specifically "going off" on

8   employees, "acting stupid," and spitting on a bus driver. AR 2509. The ALJ interpreted

9   there was "an element of volition in these reports," and that the "claimant acknowledges

10  the effects of his actions." AR 1961.

11         The ALJ may "draw inferences logically flowing from the evidence." *Sample v.*

12  *Schweiker,* 694 F.2d 639, 642 (9th Cir. 1999). However, an ALJ may not

13  speculate. *See* SSR 86–8. Here, the ALJ explains that there was "an element of

14  volition" in Dr. Wheeler's notes and claims plaintiff "acknowledges the effects of his

15  actions," but does not explain how this was inferred, especially since Dr. Wheeler's

16  notes contain no observations or findings about plaintiff exaggerating his symptoms or

17  malingering. *See* AR 1961; 2508-12. The ALJ's finding that there was "an element of

18  volition" in Dr. Wheeler's reports was speculation, and the ALJ erred in discounting Dr.

19  Wheeler's opinion for this reason.

20         However, the ALJ could logically infer that there was a "volitional element in

21  [plaintiff's] reportedly poor functioning" based on the rest of his medical record,

22  specifically to the series of treatment notes describing plaintiff largely as friendly,

23  pleasant, and cooperative. AR 1961. Plaintiff's record also includes notes from Dr.

24

25

Budwey, who observed (in April 2017) that plaintiff "appeared to be exaggerating his symptoms" after conducting the Rey-15 test that indicated he was "likely malingering". AR 1257. Based on the contrast between Dr. Wheeler's opinion and Mr. Budwey's treatment notes, the ALJ could have reasonably found that the there was "a volitional element" when plaintiff presented to Dr. Wheeler. As the ALJ provided a valid reason to discount Dr. Wheeler's 2020 opinion, any error the ALJ may have committed is harmless. *See Carmickle*, 533 F.3d at 1162-1163.

3.    Opinion of Dr. Brown

Michael L. Brown, Ph.D. evaluated plaintiff on March 7, 2012 and found plaintiff "would not likely be able to work competitively at this time" because of "the severity of his current mood and anxiety symptoms," and that he can socialize minimally. AR 566-67. The ALJ discounted Dr. Brown's opinion because (1) the determination of whether a claimant is able to work competitively is an issue reserved to the Commissioner and (2) it is inconsistent with the medical record. AR 1958.

The ALJ correctly explains that the determination of whether a claimant can work is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). But what Dr. Brown provided was "an assessment based on objective medical evidence of [the claimant's] likelihood of being able to sustain full-time employment." *See Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012). Dr. Brown completed a mental status exam, and his statement about plaintiff not being able to work competitively "at this time" was based on his assessment of plaintiff's "current mood and anxiety symptoms." AR 566. The ALJ, therefore, could not discount Dr. Brown's opinion for this reason.

However, the ALJ can discount Dr. Brown's opinion if it is inconsistent with the medical record. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Ghanim v. Colvin*,

763 F.3d 1154, 1161 (9th Cir. 2014) (An ALJ may give less weight to

medical opinions that conflict with treatment notes). Plaintiff's medical record includes a

series of treatment notes taken during plaintiff's therapy session largely describing him

as cooperative, friendly, and polite, despite his depression and anxiety. AR 1958. The

ALJ, therefore, could reasonably find that plaintiff's demeanor during these sessions

would be inconsistent with Dr. Brown's opinion. As the ALJ has provided a valid reason

to discount Dr. Brown's opinion, any error the ALJ committed is harmless. *See*

*Carmickle*, 533 F.3d at 1162-1163.

    4.    <u>Opinion of Dr. Krueger</u>

        Keith J. Krueger, Ph.D. evaluated plaintiff on May 7, 2013 and assigned the

same limitations to plaintiff's ability to perform several basic work activities as Dr.

Wheeler did in 2015. AR 506-07, 511-12. The ALJ discounted Dr. Krueger's opinion

because it was inconsistent with medical records showing unremarkable mental status

examinations and improved and/or stable symptoms. AR 1958-59 (citing exhibits 12 F,

20F, 21F, 25F, 31F, 34F, 38F, and 39F).

        As discussed above, the ALJ may discount a medical opinion if it is

inconsistent with the medical record. *See* 20 C.F.R. §§

404.1527(c)(4), 416.927(c)(4); *Ghanim*, 763 F.3d at 1161. Here, the ALJ pointed to the

"unremarkable mental status examinations," such as those conducted by Dr. Wheeler.

AR 1958-59. Because Dr. Krueger's opined limitations are identical to those assigned

by Dr. Wheeler, and the Court has found that Dr. Wheeler's mental status examinations

substantially supported the ALJ's decision to discount her opinion, the Court also finds

here that the ALJ reasonably discounted Dr. Krueger's opinion based on its

inconsistency with plaintiff's mental status examinations. AR 506-07, 511-12. Further,

1   because the ALJ has provided a valid reason to discount Dr. Krueger's opinion, the

2   Court does not need to further analyze whether the ALJ erred in discounting his opinion

3   for other reasons. Any error committed by the ALJ based on those grounds would be

4   harmless. *See Carmickle*, 533 F.3d 1155 at 1162-1163.

5          5.      Opinion of Dr. Budwey

6          Siobhan Budwey, Ph.D. evaluated plaintiff on April 14, 2017 and found him

7   moderately to severely limited in basic work activities. AR 1254-57. The ALJ discounted

8   Dr. Budwey's opinion because Dr. Budwey noted plaintiff as "likely malingering" after

9   conducting a Rey-15 test and because it was inconsistent with treatment records

10  showing unremarkable mental status exams and stable or improved symptoms. AR

11  1257.

12         As previously discussed, an ALJ may discredit a medical opinion if the opinion is

13  contradicted by the offering provider's own treatment notes. *Buck*, 869 F.3d 1050.

14  Considering that Dr. Budwey observed that plaintiff "appeared to be exaggerating his

15  symptoms as evidenced by his performance on the Rey-15," (AR 1257), the ALJ could

16  reasonably find that Dr. Budwey's opinion about plaintiff's ability to perform basic work

17  activities contradicted by his own treatment notes, specifically his findings after

18  conducting a Rey-15 test. This is a valid reason, supported by substantial evidence,

19  therefore the Court cannot say that the ALJ erred in discounting Dr. Budwey's opinion.

20  Additionally, because the ALJ has provided at least one valid reason to discount Dr.

21  Budwey's opinion, there is no need for the Court to further analyze if the other reasons

22  provided by the ALJ in discounting his opinion were erroneous. Any error committed by

23  the ALJ based on those grounds would be harmless. *See Carmickle*, 533 F.3d 1155 at

24  1162-1163.

25

1

2

3        6.      Opinion of Mr. Gray, MA

4        Paul Gray, MA, a treating medical source of plaintiff, completed an assessment
regarding plaintiff's ability to sustain work activities over a normal workday and
workweek on November 10, 2016. AR 777-81. Mr. Gray found plaintiff moderately and
marked limited with his understanding and memory, sustained concentration and
persistence, social interaction, and adaptation. AR 780. He assessed that plaintiff's
mental impairments "persist and continue to negatively impact his ability to function at a
level where he would be able to successfully maintain employment." AR 781.

        Plaintiff filed his applications before March 27, 2017. Under the Social Security
regulations applicable to this case, "only 'acceptable medical sources' can [provide]
medical opinions [and] only 'acceptable medical sources' can be considered treating
sources." *See* SSR 06-03p. In addition, there are "other sources" such as nurse
practitioners, therapists, and chiropractors, who are considered other medical sources.
S*ee* 20 C.F.R. § 404.1513(d)(1). *See also Turner v. Comm'r of Soc. Sec.,* 613 F.3d
1217, 1223–24 (9th Cir. 2010); SSR 06–3p. Evidence from "other medical sources" may
be discounted if, as with evidence from lay witnesses in general, the ALJ "gives reasons
germane to each [source] for doing so." *Molina v. Astru*e, 674 F.3d 1104, 1111 (9th Cir.
2012) (citations omitted).

        The ALJ discounted Mr. Gray's opinion because (1) the determination of whether
a claimant is able to work is reserved for the Commissioner, (2) Mr. Gray is not an
acceptable medical source, and (3) because Mr. Gray's findings were inconsistent with
plaintiff's medical records.

        As previously discussed, while the determination of whether a claimant can work
is reserved to the Commissioner, 20 C.F.R. § 404.1527(d)(1), what Mr. Gray provided

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 11

here was "an assessment based on objective medical evidence of [the claimant's] likelihood of being able to sustain full-time employment." *See Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012). Mr. Gray completed a mental assessment based on a review of plaintiff's prior medical records and his direct examinations. AR 779-81. The ALJ, therefore, could not discount Mr. Gray's opinion for this reason. Nor could the ALJ discount Mr. Gray's opinion simply for the sole reason that he is not an acceptable medical source. As a counselor, Mr. Gray is an "other medical source," and the ALJ must provide a germane reason to discount his medical opinion. *Molina*, 674 F.3d at 1104.

In this case, the ALJ pointed to plaintiff's medical records, specifically to a series of treatment notes describing him as friendly, polite, and cooperative. AR 1959. The Court has found that these treatment notes sufficiently support the ALJ's decision to discount the medical opinions of Dr. Wheeler, Dr. Brown, and Dr. Krueger. Because Mr. Gray's opinion is largely similar to their opinions and the ALJ need only provide a germane reason to discount it, the Court finds that the ALJ did not err in finding Mr. Gray's opinion inconsistent with the treatment notes. Additionally, because the ALJ has provided a valid reason to discount Mr. Gray's opinion, there is no need for the Court to further analyze if the ALJ erred in discounting it for other reasons. Any error committed by the ALJ based on those grounds would be harmless. *See Carmickle*, 533 F.3d 1155 at 1162-1163.

7.    Opinion of Dr. Toews

Plaintiff argues that the ALJ erred in discounting the opinions of Dr. Wheeler, Dr. Krueger, Dr. Budwey, and Mr. Gray, and relying instead on the opinion of non-examining doctor, Dr. Toews. Dkt. 11, pp. 7–10; AR 1959, 1961.

Dr. Toews testified during the January 2021 hearing and found plaintiff had no cognitive limitations and that he was moderately limited with his ability to relate and interact with others; concentrate and persist and maintain pace; and adapt or manage himself. AR 1994. He testified that plaintiff would have no difficulty with understanding even fairly complex instructions in a job; would be mildly limited with dealing with more two or three coworkers; and would be able to tolerate supervision as long as not overly critical. *Id*. Dr. Toews opined plaintiff should be restricted to no more than superficial interaction with the general public and should be considered for a routine and repetitive type of work. AR 1994-95.

An examining physician's opinion is "entitled to greater weight than the opinion of a non-examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1)("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester,* 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes, supra*, 881 F.2d at 752).  "In order to discount the opinion of an examining physician in favor of the opinion of a non-examining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing *Lester,* 81 F.3d at 831).

Here, the ALJ reasonably found that the record was consistent with Dr. Toews's opinion about plaintiff's cognition and ability to concentrate, persist, or maintain pace, as well as his opinion about plaintiff's ability to interact with others. The record shows plaintiff often had clear thoughts, good memory, fair insight and judgment, normal attention span and concentration. AR 1945 (citing AR 532, 561, 567, 575-78, 619, 633, 638, 768, 772, 1258, 1311, 1318, 1328, 1347, 1694-95, 1711, 1723, 1730, 1739, 1870, 1879, 1883, 1887, 1912). Treatment notes frequently described plaintiff presenting as friendly, polite, and cooperative with his medical providers. AR 1946 (citing AR 532, 640, 644, 654, 663, 674, 697, 1311, 1318, 1347, 1358, 1387, 1400, 1427, 1440, 1604, 1607, 1656, 1658, 1675, 1675, 1685, 1695, 1700, 1867, 1879, 1883, 1891, 1896, 1907, 2367). The ALJ also reasonably found Dr. Toews's opinion about plaintiff's ability to concentrate, persist, or maintain pace and adapt or manage consistent with plaintiff's daily activities. AR 1946. The record shows that plaintiff is able to take care of his father, cook, shop, go on walks, use public transportation, and manage his funds. AR 567 ("He is currently able to complete many of his ADLs"), 363-70, 401-08, 450-57, 557, 615, 630, 1215-22, 1255.

Based on the substantial evidence set forth by the ALJ, the Court cannot say the ALJ erred in finding Dr. Toews's opinion consistent with the overall medical record and plaintiff's daily activities. Accordingly, the Court finds that the ALJ did not err in discounting the opinions of plaintiff's examining medical sources in favor of Dr. Toews's opinion.

Plaintiff also argues that the ALJ erred for failing to incorporate Dr. Toews's opinion that that plaintiff should not have an overly critical supervisor into the RFC. Dkt.

11, p. 15. During the January 2021 hearing, the ALJ asked Dr. Toews if he had "any specific limitations, or functional limitations, or recommendations" for plaintiff. AR 1994. Dr. Toews replied:

> Well, there would be no difficulty with understanding even fairly complex instructions with respect to a job. I think he would have mild limitations dealing with any more than two or three coworkers. *He would be able to tolerate supervision as long as it is not overly critical supervision.* I think he should be restricted to no more than superficial interaction with the general public….

AR 1994-95 (emphasis added). An RFC must include all of the claimant's functional limitations supported by the record. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

Based on Dr. Toews's response to the ALJ's question, the Court cannot say that his statement regarding the kind of supervision plaintiff can handle was a functional limitation that the ALJ was required to incorporate into the RFC. When asked for his opinion, Dr. Toews specified plaintiff's mild limitations with dealing with coworkers, but did not assign a limitation to his ability to tolerate critical supervision. Further, the Ninth Circuit has held that "[t]he need for 'an understanding supervisor' does not represent the same type of restriction" that the ALJ must adopt as it is too vague for a concrete interpretation of either the ALJ or a Vocational Expert ("VE"). See *Thomas v. Saul*, 796 Fed. Appx. 923, 925-26 (9th Cir. 2019). Accordingly, the Court finds that the ALJ did not err by deciding to exclude Dr. Toews's statement from plaintiff's RFC.

B. Whether the ALJ Properly Evaluated Plaintiff's Subjective Testimony

Plaintiff assigns error to the ALJ decision to discount his subjective testimony due to (1) its inconsistency with the overall medical evidence, and (2) plaintiff's daily activities. Dkt. 11, pp. 15–18.

Plaintiff testified that his inability to work primarily stems from his mental health impairments. AR 2034. Plaintiff testified that he has visual and audio hallucinations a few times a week. AR 2044-45. With regards to his concentration, plaintiff said he cannot focus enough to read a newspaper. AR 2050. Plaintiff testified that he often does not want to talk to anybody and cannot be around other people. AR 2043, 2050. In addition, he stated that when working, he gets frustrated, overwhelmed, and starts to yell. AR 2043. He has been kicked off the public transportation for his behavior, and as a result, had to walk eight miles for eight months to a year to attend treatment. AR 2038.

As to his physical health, plaintiff testified that his back muscle started hurting due to bloating from his IBS and now wears a back brace. AR 2046-48. He estimated that he can walk for about two to five blocks before he has to take a rest. AR 2049-50. He stated that he can lift up to ten pounds in each hand, and can sit for a couple of hours at a time and stand for five to ten minutes. AR 2050.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*)).  In evaluating a claimant's allegations of limitations, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted).

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). Here, the ALJ found that plaintiff's mental health symptoms and physical impairments were not as intense, persistent, and limiting as alleged given that the overall medical evidence shows plaintiff has intact memory, intact cognition, average or above average intelligence, fair judgment and insight, full orientation, and intact concentration. AR 1950 (citing AR 567, 578-79, 618-19, 633, 737-38, 1258, 1880-85, 2512). Plaintiff's reports of auditory hallucinations were described by Dr. Budwey as "vague symptoms and may be more related to the anxiety, worrying, and rumination he experiences than actual psychosis." AR 1255. As previously mentioned, Dr. Budwey administered the Rey-15 test and found plaintiff was likely malingering about his symptoms. AR 1257. Reports of plaintiff's physical exams also do not show any back impairments. AR 1599. Instead, they show that he might be "slightly limited" in performing work-related physical activities and that he is able to sit, stand, and walk for eight hours. *Id.*

The ALJ similarly found plaintiffs subjective symptom testimony not as severe as alleged considering plaintiff's daily activities. AR 1953. An ALJ may discount a claimant's testimony based on daily activities that either contradict his testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility." *Reddick*, 157 F.3d at 722.

The record shows plaintiff is able to take care of his father, shop, go on walks, and use public transportation. AR 567 ("He is currently able to complete many of his ADLs") 557, 615, 630, 1255. Plaintiff also stated that for eight months to a year, he walked eight miles so that he can attend his treatment sessions. AR 2038-2039.

Overall, medical evidence and plaintiff's level of daily activities throughout the relevant period were inconsistent with plaintiff's statements about the severity of his symptoms. Based on these inconsistencies, the ALJ provided clear and convincing reasons to discount plaintiff's testimony.

C. Whether the ALJ Properly Evaluated Lay Witness Evidence

When evaluating opinions from non-acceptable medical sources such as a therapist or a family member, an ALJ may expressly disregard such lay testimony if the ALJ provides "reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). And where an ALJ has provided clear and convincing reasons to discount a claimant's testimony, those reasons are germane reasons for rejecting similar lay witness testimony. *See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694* (9th Cir. 2009).

In a function report, plaintiff's brother wrote about plaintiff's inability to be around others and having poor concentration and attention skills. AR 441-48. The ALJ found plaintiff's brother's statements consistent with plaintiff's testimony and rejected them largely for the same reasons he rejected plaintiff's statements. AR 1961-62. Because the Court has found that the ALJ provided clear and convincing reasons to discount plaintiff's testimony, the Court finds here that those reasons are germane to similarly discount the statements of plaintiff's brother.

1    D.  Whether the ALJ Erred By Failing to Reopen Plaintiff's 2012 Claim

2         Plaintiff assigns error to the ALJ's failure to acknowledge in her decision that his

3    April 2012 claim was reopened when this Court reversed and remanded ALJ Erickson's

4    decision on July 10, 2018. Dkt. 11, p. 19. However, as the Commissioner points out, the

5    ALJ nonetheless considered the relevant period before deciding on plaintiff's status. AR

6    1940-42, 1864. Plaintiff also admits that this was most likely a "scrivener's error" and

7    fails to show how this omission in the ALJ's decision was an error harmful enough that it

8    would be prejudicial to him and his case. *See* Dkt. 11, p. 19. Because plaintiff has not

9    provided a convincing argument regarding the ALJ's failure to acknowledge that his

10   2012 case was reopened, the Court finds this error harmless and "inconsequential" to

11   the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454

12   F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115.

13   E.  The ALJ's Decision is Affirmed

14        Plaintiff asks that the Court remand for an award of benefits based on the ALJ's

15   erroneous evaluations of the evidence. Dkt. 11, pp. 19–20. But the ALJ's decision must

16   be upheld unless the decision is based on legal error or not supported by substantial

17   evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). The Court has found

18   that the ALJ reasonably discounted the opinions of Dr. Wheeler, Dr. Brown, Dr.

19   Krueger, Dr. Budwey, Mr. Gray, in favor of the opinion of Dr. Toews. The Court has also

20   found that the ALJ did not err in discounting the testimonies of plaintiff and plaintiff's

21   brother, nor did she harmfully err in failing to acknowledge in her decision that plaintiff's

22   2012 claim was reopened. Accordingly, the ALJ's decision to deny plaintiff's benefits is

23   affirmed.

24

25

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

Dated this 18th day of May, 2022.


Theresa L. Fricke
United States Magistrate Judge

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 20